J-S51011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| KENDALL PHILIPS | |
| Appellant | No. 3133 EDA 2015 |

Appeal from the Judgment of Sentence October 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010940-2013

BEFORE:  BOWES, J., SHOGAN, J., AND STEVENS, P.J.E.,*

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 21, 2017**

Kendall Philips appeals from the aggregate judgment of sentence of nine to thirty years incarceration imposed following his jury trial convictions for sexual assault and robbery.  We affirm.

The trial court aptly summarized the testimony presented by the Commonwealth at trial, which we adopt herein.

> On July 23, 2011, [K.K.] borrowed a neighbor's car to give James Spain a ride to the area of Bridge and Lesher Streets in Philadelphia.  Her seven[-]year[-]old son was in the back seat. Appellant, an associate of Spain, was waiting for them at that location.  [K.K.] had never met and did not know Appellant. When [K.K.] and Spain exited the vehicle, the three engaged in brief conversation before Appellant took [K.K.] into a nearby alley.  As Appellant had [K.K.] pinned against a chain link fence, Spain ran into the alley where he rummaged through her purse, stealing her car keys.  Once he retrieved the keys, Spain took off in the car with the victim's young son still in the back seat.

---

* Former Justice specially assigned to the Superior Court.

As Spain drove off [K.K.] became highly upset and screamed for her son. Appellant choked her around the neck until she lost consciousness. When she regained consciousness she found herself on the ground with Appellant on top of her with his penis inside her vagina. [K.K.] again panicked about her missing child and pleaded with Appellant to find him. Appellant made a phone call to Spain and informed [K.K.] that Spain had left her son at a Chinese restaurant at Bridge and Hawthorne Streets. [K.K.] rushed to the location to get her son and then immediately reported the crime to police.

Philadelphia Police Officer Ashley Johnson testified that [K.K.] told her she had observed Appellant drop something in the alley as he walked away after the assault. Officer Johnson further testified that [K.K.] was very upset and had bruises on her arms, legs and back and strangulation marks around her neck. Officer Christopher Brennan recovered a condom from the alley where the assault took place. Because [K.K.] had never seen Appellant before that night and could not make an identification, the crime remained unsolved until January 2013 when the sperm on the condom was matched to Appellant's DNA profile. Appellant was finally arrested for this case on May 30, 2013.

Philadelphia Police Officer Edward Lichtenhahn, who interviewed the Appellant after he was arrested, testified at trial and read from the Appellant's statement. In response to [whether K.K. consented to sex], Appellant answered . . . "In the beginning she looked scared, then finally gave me oral sex. And in the middle of the oral sex that's when I stopped her so I could have vaginal sex with her. When I was having sex with her and I nutted, she told me to stop. But I was really into it and I continued having sex with her."

Appellant testified that Spain had called him saying he had a woman who wanted to buy some Percocets, and that [K.K.] agreed to give him sex in exchange for the drugs. Appellant claimed that the sex was consensual but could not explain how she sustained her injuries. He further testified that he tried to stop Spain from stealing her keys and had no idea Spain intended to steal her car.

- 2 -

Trial Court Opinion, 7/20/16, at unnumbered 2-3 (citations to transcript omitted).[1]

The parties proceeded to a jury trial on seven charges: aggravated assault, three sex crimes (rape, involuntary deviate sexual intercourse, and sexual assault), unlawful restraint, robbery, and conspiracy to do same. The jury rendered guilty verdicts at the counts of robbery and sexual assault, and not guilty at all remaining counts. Appellant was sentenced to a period of five to ten years incarceration for sexual assault, and a consecutive period of four to twenty years incarceration for robbery. He timely appealed and the matter is properly before us. Appellant presents one question for our review: "Was the evidence insufficient to convict Appellant Kendall Philips?" Appellant's brief at 3.

Whether the evidence is sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a

---

[1] Resolution of this appeal was delayed due to initial counsel's withdrawal for medical reasons. Then, the appeal was dismissed on March 21, 2017 because newly-appointed counsel did not file a brief. The appeal was subsequently reinstated.

reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Doughty*, 126 A.3d 951, 958 (Pa. 2015).

Appellant challenges both convictions, and we address each in turn. The crime of sexual assault is defined as follows: "[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. The evidence easily serves to establish these elements. The victim clearly testified that she was choked by Appellant, and, when she regained consciousness, Appellant was penetrating her vagina with his penis. Clearly, she did not consent.

Appellant's argument to the contrary rests on the jury accepting his version of events. "[Appellant] stated that the complainant gave him oral sex in the alley. He said that he wanted to go further and that K.K. said alright." Appellant's brief at 17. Appellant indeed relayed that version of events to the jury but the victim's account was quite different, and the jury was free to credit or discredit the differing accounts as it saw fit. As we observed in *Commonwealth v. McDonough*, 96 A.3d 1067 (Pa.Super. 2014):

> Despite McDonough's trial testimony that the victim consented to his sexual acts, the jury, as the trier of fact, was free to believe all, part, or none of the evidence presented by the witnesses. It is evident from the verdict that the jury obviously found the victim's testimony credible and chose not to believe McDonough's version of the events. Because it was within the

- 4 -

province of the jury to make these credibility findings with regard to the issue of consent, McDonough's first claim fails.

*Id*. at 1070 (citation omitted). Therefore, the evidence was sufficient to support the verdict.

We now address the conviction for robbery. The Commonwealth was required to prove that "[I]n the course of committing a theft, [Appellant] . . . inflict[ed] serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(a)(1)(i).[2] An act is "in the course of committing a theft" if it occurs during an attempt to commit theft or in flight after its commission. 18 Pa.C.S. § 3701(a)(2).

Like the foregoing claim, Appellant challenges the sufficiency of the evidence in a light most favorable to him. He claims that "[Appellant] was not aware that Mr. Spain would take the bag, car keys, or vehicle. [Appellant] was not a conspirator to commit Robbery nor did he commit a robbery." Appellant's brief at 19.

The testimony of K.K. established that Appellant knew precisely what Spain was doing, as she stated that Appellant pinned her against a fence

_____

[2] The Commonwealth asserts that the conviction may be sustained if the Appellant took or removed property by force however slight. Commonwealth's brief at 9. That language tracks 18 Pa.C.S. § 3701(a)(1)(v), which is a felony of the third degree; however, according to the docket, Appellant was convicted of robbery as a felony of the first degree under (a)(1)(i). In any event, Appellant does not challenge the serious bodily injury element.

while Spain, the conspirator, rummaged through her purse, took the car keys, and fled with the vehicle. Appellant then proceeded to commit sexual assault. We find that the evidence sufficed to establish that Appellant acted as an accomplice.[3] Accomplice liability is set forth by statute.

> **(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> **(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:
> . . . .
>> (3) he is an accomplice of such other person in the commission of the offense.
>
> **(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:
>
>> (1) with the intent of promoting or facilitating the commission of the offense, he:
>>
>>> (i) solicits such other person to commit it; or

---

[3] To this end, we note that the trial court opinion states, "The jury made it clear that its verdict was based on an accomplice theory of liability." Trial Court Opinion, 7/20/16, at unnumbered 5. Appellant does not challenge the jury instructions, but we note the following facts.

The certified record includes a written jury question that states, "Your Honor, we the jury request . . . . clarification of the robbery charge. Is he charged as an accomplice?" The verdict sheet, as signed by the foreperson, states "Not Guilty" for robbery but has a handwritten notation underneath stating, "criminal accomplice to robbery: guilty." The docket indicates that the jury was polled, presumably because of this discrepancy. The docket entry reads as follows: "The Jury was polled as to whether the[y] feel that the defendant didn't commit the Robbery but was an accomplice to the Robbery."

> > (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> . . . .

18 Pa.C.S. § 306. This requirement "may be established wholly by circumstantial evidence. Only 'the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.' No agreement is required, only aid." **Commonwealth v. Knox**, 50 A.3d 732, 739 (Pa.Super. 2012) (quoting **Commonwealth v. Kimbrough**, 872 A.2d 1244, 1251 (Pa.Super.2005)).

Applying that test, the evidence suffices to establish that Appellant aided Spain. He physically restrained the victim while Spain stole the keys and the vehicle. He thereafter rendered K.K. unconscious and had sex without her consent. A rational fact-finder could find that Appellant aided Spain in the commission of the theft crime, and the conviction must stand. [4]

Judgment of sentence affirmed.

---

[4] Appellant highlights the statutory elements of the conspiracy charge, and posits that he cannot be guilty of robbery since he was deemed not guilty of conspiracy. However, inconsistent verdicts are generally allowed to stand so long as the evidence is sufficient to support the conviction. **See Commonwealth v. Miller**, 35 A.3d 1206, 1208 (Pa. 2012). Moreover: "Conspiracy requires proof of an additional factor which accomplice liability does not-the existence of an agreement." **Commonwealth v. McClendon**, 874 A.2d 1223, 1229 (Pa.Super. 2005) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017