J-S24015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ELIJAH JULMANNE WHITE | : | |
| | : | |
| Appellant | : | No. 2182 EDA 2018 |

Appeal from the Judgment of Sentence Entered February 16, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0002550-2017

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 21, 2019**

Elijah Julmanne White appeals, *nunc pro tunc,* from the judgment of sentence, entered in the Court of Common Pleas of Lehigh County, after a jury found him guilty of intimidation of a witness[1] and simple assault.[2]  On appeal, counsel has filed an "***Anders*** brief"[3] and motion to withdraw.  Based on our review of the record, we affirm the judgment of sentence and grant counsel's motion to withdraw.

We summarize the relevant facts and procedural history as follows. Destiny Rivera, the victim, had lived with White since September of 2014. Rivera had four children; White is the father of the youngest child.  On May

---

[1] 18 Pa.C.S.A. § 4952.

[2] 18 Pa.C.S.A. § 2701.

[3] ***Anders v. California***, 386 U.S. 738 (1967).

---

\*   Former Justice specially assigned to the Superior Court.

10, 2017, Rivera and White were home with the child they shared. After a dispute, White told Rivera they were going food shopping. White's friend arrived with a car and Rivera put the baby in a car seat inside the vehicle. After the baby was in the car, White called Rivera back into the house. Once Rivera reached the top of the stairs, White kicked her in the head, resulting in a cut on her lip.

At the supermarket, White was "poking and taunting" her, warning her "wait till we get home." N.T. Trial, 11/14/17, at 58. After returning home, White went to the laundromat while Rivera washed dishes at home. As Rivera was washing dishes, White called and informed her she had forgotten to give him the baby's bag of laundry. When White returned to collect the laundry bag, he went upstairs and kicked Rivera in the back. Rivera testified she told White she was afraid he was going to kill her, and White responded that he did not care. She then threatened to call the police and White struck her twice, telling her "you know better." *Id.* at 62. When White left, Rivera called her cousin, Sylvia Rivera. Rivera told Sylvia what happened and Rivera told her she was afraid White might kill her. Sylvia called the police at the end of their phone conversation.

Officer Victor Diaz and Officer Jeff Tanner of the Allentown Police Department responded to the call. After talking with Rivera, the officers immediately noticed that Rivera was shaky and nervous and there was redness on the right side of her face. Rivera told the police that "nothing happened" and requested that the police leave. N.T. Trial, 11/15/17, at 15.

The officers informed Rivera that they were required to investigate when there are visible marks or injuries on a victim. Rivera told the officers the marks were a result of her having fallen. After a little while, Rivera revealed to the officers that she also had a bruised rib cage. She then told the officers about White's assault.

While Rivera was speaking with the police, her phone rang continuously. She told the officers it was White calling and she needed to answer it. She answered the phone and put it on speaker to allow the officers to hear the conversation. During the call, White told Rivera, "tell the police that nothing happened and to get them out of there . . . or [] something bad is going to happen to you if I come home and you don't." N.T. Trial, 11/14/17, at 36. White also warned Rivera that "if you do tell them what happened, you know what is going to happen to you." N.T. Trial, 11/15/17, at 17.

After White's warnings, Officer Diaz took the phone to talk to White. White cursed at the officer and told him that Rivera "didn't call the cops . . . [Rivera] knows what would happen if she call[ed] the cops." N.T. Trial, 11/14/17, at 60. The officers refused to leave and White responded with more profanity and threats.

The officers located and arrested White a block from Rivera's residence. White was argumentative and angry while the officers arrested him. While White was being placed into the vehicle, he screamed to a friend, "tell that bitch that I know that she called and she knows what's coming to her." N.T. Trial, 11/15/17, at 23.

Rivera testified that the assaults resulted in a cut lip, two black eyes, and an injured lower back. Rivera testified that she had requested that family members call the police before. On previous occasions she had lied to the officers and told them everything was "okay." She testified that, during the previous encounters with police, White was upstairs with the children. White had told her that if she ever called the police on him, he would kill one of her children.

White was arrested on May 10, 2017. Trial counsel was appointed and he entered his appearance on July 18, 2017. On August 31, 2017, White filed a *pro se* motion to suppress physical evidence. The Clerk of Courts returned the motion due to procedural deficiencies and White filed a second *pro se* motion to suppress on September 11, 2017. The trial court forwarded the motions to counsel and did not rule on them, due to the prohibition on hybrid representation.[4] On, November 13, 2017, the Commonwealth filed a notice of intent to introduce other crimes, wrongs, acts or evidence under Pennsylvania Rule of Evidence 404(b). Trial counsel filed a motion *in limine* to exclude the evidence of prior bad acts. After a pre-trial hearing, the trial court granted the Commonwealth's request to introduce evidence of White's

---

[4] There is no constitutional right to hybrid representation at trial. **Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993). The trial court has complete discretion to decide whether a defendant may act as co-counsel. **Commonwealth v. Colson**, 490 A.2d 811, 822 (Pa. 1985). When counsel represents a defendant, the court will not accept *pro se* motions. **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016). When hybrid representation is not permitted, *pro se* motions are legal nullities. **See Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010).

prior bad acts. The trial began on November 14, 2017. At the conclusion of the Commonwealth's case, trial counsel moved for a directed verdict on the intimidation of a witness charge. The trial court denied the motion.

On November 15, 2017, a jury found White guilty of all charges and the trial court ordered a pre-sentence investigation report, deferring sentencing until December 14, 2017. On December 5, 2017, trial counsel moved to withdraw. After a hearing, the trial court granted the request to withdraw and appointed new counsel on December 14, 2017. On February 16, 2018, the trial court sentenced White to an aggregate term of four and one-half to nine years' incarceration. Counsel filed a motion to withdraw, which the trial court granted on February 20, 2018. The trial court denied White's *pro se* post-sentence motion on March 9, 2018. On April 6, 2018, White filed a *pro se* Post Conviction Relief Act[5] ("PCRA") petition and current counsel was appointed. White's appellate rights were reinstated *nunc pro tunc* and this appeal follows. On appeal, counsel has filed a motion to withdraw pursuant to **Anders**.

In order to withdraw counsel must: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support an appeal; and (3)

---

[5] 42 Pa.C.S.A. §§ 9541-9546.

furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief raising any additional points that the appellant deems worthy of review. ***Commonwealth v. Hernandez***, 783 A.2d 784, 786 (Pa. Super. 2001). In ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), the Pennsylvania Supreme Court held that, in order to withdraw under ***Anders***, counsel must also state his reasons for concluding his client's appeal is frivolous.

Instantly, counsel's petition states that he has made an examination of the record and concluded the appeal is wholly frivolous. Counsel indicates that he supplied White with a copy of the brief and a letter explaining his right to proceed *pro se* or with privately-retained counsel, and to raise any other issues he believes might have merit.[6] Counsel has also submitted a brief, setting out the issues raised by White and, pursuant to the dictates of ***Santiago***, explains why he believes the appeal to be frivolous. Thus, counsel has substantially complied with the requirements for withdrawal.

Counsel having satisfied the above requirements, this Court must conduct its own review of the proceedings and render an independent

---

[6] White responded to the ***Anders*** brief, requesting new counsel and arguing that he was convicted of a crime with which he was not charged. However, while the initial criminal complaint did not include the intimidating a witness charge, the bill of information includes all charges of which the jury found White guilty. ***See*** Information, 11/14/17. White signed the bill of information and his counsel was able to call witnesses and mount a defense on the charge.

judgment as to whether the appeal is, in fact, wholly frivolous. ***Commonwealth v. Wright***, 846 A.2d 730, 736 (Pa. Super. 2004).

White has raised four issues on appeal. White first argues that the trial court erred by not holding an evidentiary hearing in response to either his *pro se* motion to suppress or the Commonwealth's notice of intent to introduce prior bad acts evidence. White also argues the trial court erred when it denied White's motion for a directed verdict. Finally, White argues that the evidence was insufficient to find him guilty of intimidation of a witness.

A defendant must file an omnibus pretrial suppression motion within thirty days of his arraignment. ***See*** Pa.R.Crim.P. 579(A). A defendant waives any suppression issue not raised in a timely motion. Pa.R.Crim.P. 581(B).

White's counsel entered his appearance on July 18, 2017. While represented by counsel, White filed his *pro se* motion to suppress physical evidence on September 11, 2017. White's *pro se* motion was a legal nullity and the trial court was not required to address it.[7] ***See Ellis***, 626 A.2d at 1139. Thus, the trial court acted appropriately when it did not hold an evidentiary hearing on the motion to suppress.

_____

[7] White filed his motion thirty-eight days after his arraignment. Thus, it was untimely by eight days. Moreover, White's motion was deficient as it did not specify the evidence he wanted suppressed nor the basis for the suppression. Finally, appellate counsel was unable to find a lawful basis to suppress any physical evidence. Appellant's Brief, at 8.

White next argues that the trial court erred by failing to hold an evidentiary hearing after the Commonwealth gave notice of its intent to introduce prior bad acts evidence at trial. Our review of the record shows that there was a pretrial hearing where the court addressed White's motion *in limine* to exclude the prior bad acts evidence. Thus, the issue is frivolous.

White next claims that the trial court erred by denying a motion for directed verdict on the charge of intimidation of a witness and that the evidence was insufficient as a matter of law. Both claims raise a challenge to the sufficiency of the evidence.

In analyzing a sufficiency claim, we examine whether the evidence admitted at trial is capable of supporting a finding on every element of the offense at issue. ***See Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015). In doing so, we view the evidence in the light most favorable to the verdict winner, drawing all reasonable inferences from it. ***See id.*** The Commonwealth's burden may be met solely through circumstantial evidence. ***See id.*** The finder of fact is entitled to believe all, some, or none of the evidence presented. ***See Commonwealth v. Diggs***, 949 A.2d 873, 877 (Pa. 2008).

White was charged with intimidating a witness in an effort to prevent the victim from reporting domestic abuse to the police.

> A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to . . .

> [r]efrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A. § 4952(a)(1). Actual intimidation of a victim is not required under section 4952. The crime is committed if a person, with the necessary *mens rea*, attempts to intimidate a victim. *See Commonwealth v. Collington*, 615 A.2d 769, 770 (Pa. Super. 1992).

Here, the victim testified that White had physically abused her for years and that he had assaulted her multiple times on May 10, 2017. White made multiple attempts to intimidate the victim and prevent her from reporting the assaults to the police. In addition to the victim's testimony to that effect, both Officer Diaz and Officer Tanner heard White threaten the victim on speakerphone. White told the victim to "tell the police that nothing happened and to get them out of there . . . or that something bad is going to happen to you if I come home and you don't." N.T. Trial, 11/14/17, at 36. In addition, as the officers were arresting him, White screamed to a friend in a nearby vehicle, "I know that [the victim] called [the police] and, you know, she knows what's coming to her." N.T. Trial, 11/15/17, at 23, 60.

The evidence is more than sufficient to find that White committed the offense of intimidation of a witness. There was testimony of an underlying crime, a battery. A jury could infer White wanted to prevent the victim from talking to police about the circumstance surrounding that crime. To that end, the victim testified that White had previously threatened to kill her children if

she spoke to police. Thus, there was sufficient evidence to support each element of intimidation of a witness.

Judgment of sentence affirmed. Petition to withdraw granted.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/21/2019*